UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIGUEL DIAZ,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA | :<br>:<br>:<br>:   Case No. 3:17-cv-675(VLB)<br>:<br>:   July 7, 2020<br>: |

## RULING AND ORDER

Petitioner Miguel Diaz brings this *pro se* petition for habeas relief under 28 U.S.C. § 2255 for the Court to vacate, set aside, or correct his sentence. He asserts an ineffective assistance of counsel claim against the lawyer who represented him at trial. [ECF No. 1]. He has also moved to amend his petition to add two additional claims: an additional ineffective assistance of counsel claim [ECF No. 13], and a claim that his sentence is unconstitutional [ECF No. 12]. For the reasons discussed herein, Mr. Diaz's motion is denied, and his motions to amend are also denied as futile.

### I.    Factual Background[1]

On May 19, 2015, law enforcement investigators retrieved a bag that Mr. Diaz had thrown from a vehicle during a police chase. *United States v. Miguel Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 25 (Pre-Sentence Investigation Report) at ¶7 (Jan. 14, 2016). The bag contained 309 baggies of heroin. *Id.* at ¶8. Soon thereafter, the investigators located Mr. Diaz in a driveway and arrested him on an outstanding

---

[1] Citations to the docket for this civil habeas action are identified as [ECF No. __ ]. Citations to the underlying criminal action are given in full.

warrant. *Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 18 (Plea Agreement: Stip. of Offense Conduct) at 13 ¶2 (Nov. 18, 2015). A search incident to arrest yielded $2,404 in cash and several keys, one of which opened an apartment. *Id.* at ¶3. A search of the apartment resulted in the seizure of 304 bags of heroin, a scale, lactose, rubber bands, 9mm rounds of ammunition, and other paraphernalia associated with heroin trafficking. *Ibid.* The contraband field-tested positive for heroin. *Ibid.* Nearby, on a kitchen cabinet, law enforcement officials found and seized a loaded black Hi Point, model G9, 9mm firearm bearing serial number 1387725 which Mr. Diaz admitted to keeping in furtherance of his drug trafficking. *Ibid.* The heroin weighed between 10 and 20 grams. *Id.* at ¶4.

## II. Procedural Background

### A. *Indictment*

On June 11, 2015, a federal grand jury sitting in Hartford returned a four-count indictment against Mr. Diaz, charging him with:

- **Possession of Heroin with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);**
- **Possession of Heroin with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);**
- **Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i);**
- **Unlawful Possession of a Firearm by a Felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).**

*See United States vs. Miguel Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 1 (Indictment) at 13 ¶2 (June 11, 2015).

### B.  Plea Agreement

In the written plea agreement, the parties agreed that Count Two carries a maximum penalty of 20 years imprisonment, and, based on the drug quantity, an advisory guidelines range of 27 to 33 months' imprisonment. *See United States v. Miguel Diaz,* No. 3:15-cr-00098-VLB-1, ECF No. 18 (Plea Agreement) at 2, 6  (Nov. 18, 2015). The parties also agreed that Count Three carries a maximum penalty of life imprisonment and "a mandatory term of imprisonment of five years that must be imposed to run consecutively to any other sentence, which in this case is the sentence… imposed [for] Count Two." *Id.* at 2, 6-7. This resulted in a total guidelines range of 87 to 93 months.

Mr. Diaz acknowledged that he "expressly understands that the Court is not bound by this agreement on the Guideline and fine ranges specified above" and that "he will not be permitted to withdraw the guilty plea if the Court imposes a sentence outside of the Guideline and fines range set forth in this agreement . . . ." *Id.* at 7. The government conditionally agreed to recommend a three-level reduction for acceptance of responsibility, and Mr. Diaz waived his right to appeal or collaterally attack a sentence that did not exceed 87 months of imprisonment. *Id.* at 5, 7. Mr. Diaz also acknowledged that "no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered unless set forth in writing, signed by all the parties." *Id.* at 11.

C.  *The Change of Plea Hearing*

On November 18, 2015, Mr. Diaz entered a change of plea to Count Two and Count Three of the indictment before the Honorable William I. Garfinkel, United States Magistrate Judge. At the hearing, Mr. Diaz was placed under oath and he affirmed that he felt "clearheaded" and had nothing in the way of medication or other substances that would negatively "affect the clarity" of his thinking. [ECF No. 5-3 (Ex. D: Nov. 18, 2015 Change of Plea Tr.) at 5-7.] Mr. Diaz was advised of his rights and affirmed that he had no difficulty communicating with his counsel, that he had had sufficient time to consult with her, that he fully understood the decision he was making, and that he was satisfied with the representation he had received. *Id.* at 8-9.

Mr. Diaz was advised of the penalties associated with the counts of conviction, specifically, that Count Two carries a maximum term of imprisonment of 20 years and that Count Three carries a maximum term of life imprisonment and a mandatory minimum term of five years that must run consecutive to any other term of imprisonment imposed on Count Two. *Id.* at 17. Government counsel made clear that while the parties agreed to a particular Guidelines calculation, the Court was not bound by it:

> So the guideline range for the heroin, Count Two charge, we believe is 27 to 33 months in prison, and then 60 months in addition, five years, for the firearm charge, Count Three.
> Page 7 states the court, the sentencing court, is not bound by our agreement. This is an agreement the parties have reached, and we'll stick to it at the time of sentencing. The government is not going to argue for anything different. Ultimately, it's Judge Bryant as the sentencing judge who holds all the discretion in deciding what sentence to impose.

*Id.* at 20-21. *See also id.* at 13. The Court also advised Mr. Diaz that the Court's calculation of the guidelines might differ from the lawyers' and that "no one can tell you exactly today what your sentence would be." *Id.* at 25. Mr. Diaz affirmed that he understood, and that a sentence different than what he expected would not be a basis for undoing his guilty plea. *Id.* at 25.

Government counsel also specifically described in open court that Diaz had acknowledged that he was pleading guilty freely and voluntarily, that he was not relying on any comments or promises from the government other than what was in the plea agreement and what was said in court, and he was not threatened, forced or intimidated into pleading guilty. *Id.* at 21. Finally, the Court asked Mr. Diaz whether "Other than what's in the plea agreement, has anyone made any promises to you of things that will happen if you enter the plea agreement?" and Mr. Diaz responded "no." *Id.* at 27.

D. <u>The Sentencing Hearing</u>

On February 11, 2016, the District Court held Diaz's sentencing hearing. The Court adopted the facts in the pre-sentence investigation report. *See United States v. Miguel Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 37 (Sentencing Hr'g Tr.) at 37 (D. Conn. Feb. 11, 2016).The Court found Diaz's offenses "very serious" in that they involved the "deadly combination of drugs and firearms." *Id.* at 25. The Court emphasized that an aggravating factor was that Diaz engaged law enforcement in a high speed chase to evade arrest that created a risk of injury to the public. The Court had a lengthy discussion with Diaz's trial counsel about the enhancement and whether the parties had contemplated it in their plea negotiations. In the

context of that discussion, Diaz's trial counsel made clear that the Court could find Diaz's range to be 87 to 93 months and sentence him anywhere within that range. *Id.* at 19, 20.

The Court rejected Mr. Diaz's claim that his criminality was due to childhood abuse because it found no causal linkage between any purported abuse and his lengthy criminal history. *Id.* at 29. Further, the Court noted that Mr. Diaz's claim of abuse appeared inconsistent with Mr. Diaz's other assertion that he left home because his family favored his sister, and that he was "good with his father" because his father cared for his son while the defendant was in prison. *Id.* at 30. The Court found the Mr. Diaz's claim "implausible" and his claim of childhood abuse "not verifiable" because he did not provide contact information for his family. *Id.*

The Court calculated Mr. Diaz's base offense level for Count 2 to be 14, and added two points due to the high speed chase, acknowledging that the parties had not included that enhancement in their calculations. *Id.* at 31. The Court subtracted two levels for acceptance of responsibility and granted, upon the government's motion, an additional one level reduction for Diaz's prompt notification of his intent to plead guilty pursuant to U.S.S.G. 3E1.1. *Id.* at 31. This resulted in a total adjusted offense level of 13, with an advisory guidelines range of 30 to 37 months. With the 60-month mandatory minimum for Count 3, this resulted in a total advisory guidelines range of 90 to 97 months. *Id.* at 32.

The Court imposed a guidelines sentence of 30 months' imprisonment on Count Two, and a consecutive 60-month sentence on Count Three, for a total of

**90 months—a sentence within the parties' guidelines estimation.**

   E.   *Appeal*

Mr. Diaz timely appealed, challenging the District Court's refusal to downwardly depart and the substantive reasonableness of his sentence on the grounds that the District Court held a clearly erroneous view of the facts about his childhood abuse. *See United States v. Diaz*, No. 16-503-cr, 675 F. App'x 68, 69 (2d Cir. 2017). The Second Circuit affirmed, finding that there was nothing in the record to suggest that the District Court misunderstood its authority to depart from the Guidelines, or that its decision was otherwise illegal and therefore its refusal to grant a downward departure was not reviewable on appeal. *Id.* In addition, the Second Circuit found that the District Court properly weighed the available evidence concerning Mr. Diaz's claim that he had been abused as a child, found the evidence unreliable and the alleged abuse, if it occurred, not causally related to the crimes of conviction. *Id.* The mandate affirming the judgment issued on February 21, 2017. *Id.*

Mr. Diaz now brings this § 2255 motion arguing that his trial counsel was constitutionally ineffective because she purportedly assured him that "he would not only receive three (3) points for acceptance of responsibility, but that in entering into a plea with the Government he would not receive more than 87-months." [ECF No. 1 at 2,6]. On October 12, 2017, this Court issued an Order to Show Cause directing the government to file its response on or before November 2, 2017. *See* [ECF No. 3].

   III.   Legal Standard

**Under 28 U.S.C. § 2255, a prisoner in federal custody may petition the federal court which sentenced him to vacate, set aside, or correct a sentence. 28 U.S.C.§ 2255(a). Relief under Section 2255 is generally available to rectify only three irregularities: "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice."** *Graziano v. United States*, **83 F.3d 587, 590 (2d Cir. 1996) (quoting** *United States v. Bokun,* **73 F.3d 8, 12 (2d Cir. 1995)).**

**"It is within the district court's discretion to determine whether a hearing is warranted."** *Pham v. United States*, **317 F.3d 178, 184 (2d Cir. 2003) (quoting** *Chang v. United States*, **250 F.3d 79, 86 (2d Cir. 2001)) (holding that even where factual issues may exist, Second Circuit precedent permits a "middle road" of deciding disputed facts on the basis of written submissions);** *see also Johnson v. Fogg,* **653 F.2d 750, 753 (2d Cir. 1981) (holding that district court was not required to provide a hearing to a** *pro se* **litigant who did not raise issues sufficient to warrant a hearing). "[A] district court need not assume the credibility of factual assertions… where the assertions are contradicted by the record in the underlying proceeding."** *Puglisi v. United States*, **586 F.3d 209, 214 (2d Cir. 2009).**

 IV.  **Analysis**

A. *Legal Standard for Ineffective Assistance of Counsel*

*Strickland v. Washington*, 466 U.S. 668 (1984), sets out the two-pronged standard for a claim of ineffective assistance of counsel. To prevail, a movant must both allege facts demonstrating that "counsel's representation fell below an

objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. As to the first showing, a movant must demonstrate that counsel's performance "amounted to incompetence under 'prevailing professional norms'" rather than demonstrating that the performance "deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690). As to the second showing, a movant must demonstrate "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Counsel's "strategic choices . . . are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A habeas petitioner will not prevail on an ineffective assistance claim by second-guessing or disagreeing with counsel's strategy. *Id.* at 689; *see Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (holding that lower court had "misapplied" *Strickland*, failed to apply the "strong presumption of competence that *Strickland* mandates," and "overlooked the constitutionally protected independence of counsel and the wide latitude counsel must have in making tactical decisions.") (internal quotation marks and ellipsis omitted). However, a constitutionally inadequate performance may be established by a "show[ing] that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," keeping in mind that "counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

B. <u>Arguments in the Petition</u>

Mr. Diaz argues that he received constitutionally ineffective assistance because his trial counsel "assured Diaz that a plea of guilty would result in a three level reduction for acceptance of responsibility, and that he would be sentenced to no more than 87 months." [ECF No. 1 at 2]. Mr. Diaz also seems to claim ineffective assistance of counsel on the grounds that his trial counsel did not discuss "brain science" to combat the Government's claims that he was a "pro/;]lific heroin dealer." *Id.* The Court addresses his arguments in turn.

### i. 87 Month Sentence Promise

The Court finds that Mr. Diaz's first basis for his petition is not successful, both because Mr. Diaz's assertions are contradicted by the written plea agreement and his sworn statements during the plea hearing, and because his assertions against his trial counsel are unsupported by an affidavit.

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The Second Circuit consistently relies on a defendant's sworn statements during a plea allocution to reject later conclusory allegations that the plea was coerced or otherwise involuntary. *See, e.g., United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (explaining that defendant's "testimony" at plea allocution "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently

made"); *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").

Further, "[w]here [a] defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, [the Second Circuit has] stated that the issue is whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation marks omitted). In *Ventura*, the Second Circuit rejected a claim that a "plea was involuntary through ineffective assistance of counsel" because, even had the petitioner's counsel performed deficiently, there was no prejudice where the court and the prosecutor accurately apprised the petitioner of his sentencing exposure before he entered guilty plea. *Id.*

Mr. Diaz's bald assertion that his lawyer assured him he would get no more than 87 months contradicts the record evidence and is unbelievable. The written plea agreement and the plea colloquy make clear that Mr. Diaz (1) understood his sentencing exposure; (2) understood that the Court might determine a guidelines range different than what the parties calculated; and (3) did not rely on promises by defense counsel outside of the plea agreement in deciding to plead guilty.

Regarding Mr. Diaz's understanding of his sentencing exposure, the written plea agreement stated that, as to Count Two, Mr. Diaz faced a maximum term of imprisonment of twenty years, and as to Count Three, he faced a maximum term of

life imprisonment and a mandatory minimum term of imprisonment of five years to be served consecutively to any term of imprisonment imposed for Count Two. *Diaz*, No. 3:15-cr-00098-VLB-1, Plea Agreement, ECF No. 18 at 2. Mr. Diaz was also expressly advised of these potential penalties during his change of plea hearing. [ECF No. 5-4 at 17].

The parties calculated that a total effective guidelines range of 87 to 93 months applied to Mr. Diaz's counts of conviction (27 to 33 months' for Count Two, and a mandatory minimum of 60 months for Count Three (consecutive)). *Diaz*, No. 3:15-cr-00098-VLB-1, Plea Agreement, ECF No. 18 at 2, 6-7. Mr. Diaz well understood that the Court was not bound by the parties' calculation, a point he acknowledged in the written plea agreement, stating "defendant expressly understands that the Court is not bound by this agreement on the Guidelines and fine ranges . . .". *Id.* at 7. He was also advised of that fact on the record during his change of plea hearing repeatedly – with the Court even telling Mr. Diaz that "the most important thing" for him to know was that the district court judge has "discretion," "make[s] all the calculations," and may have a view "differe[nt] somewhat from the lawyers here or even from probation." [ECF No. 5-4 at 25.] The Court expressly told Mr. Diaz that for those reasons "no one can tell you exactly today what your sentence is going to be," and he stated affirmatively that he understood. *Id.* at 25. The written plea agreement also plainly stated that Mr. Diaz received "no other promises . . . other than those set forth in this plea agreement," and he confirmed that very fact under oath in open court. *Diaz*, No. 3:15-cr-00098-VLB-1, Plea Agreement, ECF No. 18 at 11; [ECF No. 5-4 at 22]. Finally, Mr. Diaz's

counsel has submitted an affidavit establishing that, in light of her awareness of the law, she would not have assured Mr. Diaz of receiving a specific sentence. [ECF No. 5-6 (Ex. G: Murray Nov. 1, 2017 Aff.)].

     For Mr. Diaz now to claim, for the first time, that his lawyer made some assurance of 87 months is completely at odds with the written plea agreement and his own sworn statements. Such a claim is incredible in any event, and especially incredible here, where Mr. Diaz makes the bald assertion without any support whatsoever – no supporting affidavit or any detail as to what was said, where, or when.[2] Such "'self-serving, conclusory allegations' are insufficient to establish an ineffective assistance claim." *Hernandez v. United States*, 280 F. Supp. 2d 118, 122 (S.D.N.Y. 2003) (finding §2255 petitioner could not satisfy first prong of *Strickland* test because his allegations "are wholly conclusory and are refuted by his sworn statements at the plea allocution"); *Holland v. United States*, No. 3:11cv1868(JBA), 2014 WL 2940889, at *7 (D. Conn. June 30, 2014) (*quoting Rosenberger v. United States,* 133 Fed. App'x 799, 801 (2d Cir. 2005) (summary order)).

     In light of Mr. Diaz's prior statements under oath and his counsel's declaration, the Court rejects his assertion that his counsel promised him that he would be sentenced to 87 months or fewer, and therefore finds that he does not show that his representation fell below an objective standard of reasonableness. Since the Court decides the matter on this ground, the Court does not consider the

---

[2] On March 18, 2019, four months after the Government submitted its response, Mr. Diaz filed a reply which he identified as "this affidavit." [ECF No. 11]. Mr. Diaz did not affirm the truth of the statements in the reply under the "penalty of perjury," however, and he did not sign the motion. *See* 28 U.S.C. § 1746.

Government's argument that the three-month disparity Mr. Diaz complains of does not constitute prejudice.

    ii.    **Third Acceptance of Responsibility Point**

Mr. Diaz also seems to claim ineffective assistance of counsel on the basis that he did not receive a three-point reduction to his adjusted offense level for acceptance of responsibility, after counsel assured him that he would. [ECF No. 1 at 2]. However, this claim is simply untrue: during sentencing, the Government moved for an additional one level reduction in his guideline's calculation based on acceptance of responsibility, and the Court granted the motion. [ECF No. 37 at 31].

    iii.    **Brain Science**

Finally, in a brief sentence, Mr. Diaz seems to claim ineffective assistance of counsel on the basis that his trial counsel did not discuss "brain science" to combat the Government's claims that he was a "prolific heroin dealer." [ECF No. 1 at 2]. Mr. Diaz does not explain to what brain science he is referring, on what standard of representation he relying or what effect the argument would have had. Mr. Diaz's criminal history and his offense conduct were not contested during the course of the criminal proceeding, and he does not contest them now. *Diaz*, No. 3:15-cr-00098-VLB-1, ECF Nos. 18 and 25. Therefore, the Court finds that this argument is also insufficient to demonstrate deficient performance under Strickland.

    C.  **ECF No. 13: Motion to Amend**

On June 24, 2019, Mr. Diaz moved to amend his habeas petition to include an ineffective assistance of counsel claim on the grounds that his trial counsel failed to move to suppress evidence of a search.

### i. Timeliness

To be timely, an initial § 2255 motion must be filed within one year after the date the conviction became final, the date the Supreme Court initially recognized the basis for the claim, or the date the facts supporting the claim became (or reasonably could have become) known. 28 U.S.C. § 2255(f). If a petitioner appeals his sentence, as Mr. Diaz did here, his conviction becomes final upon the denial of a petition for certiorari or the expiration of the period in which a petition for certiorari could have been filed, *i.e.*, 90 days after the later of (a) entry of the judgment in the Second Circuit Court of Appeals (which occurs on the date the opinion is issued) or (b) the denial of any petition for rehearing. *Clay v. United States*, 537 U.S. 522, 532 (2003); S.Ct. Rule 13 (a petition for a writ of certiorari must be filed within 90 days after entry of the judgment or the denial of rehearing).

A motion to amend or supplement a § 2255 motion "will be denied where it is filed after [the limitation] period expires unless the proposed amendment relates back to the date of the original pleading within the meaning of [Federal] Rule [of Civil Procedure] 15(c)(2)." *Howard v. United States*, 533 F.3d 472, 475-76 (6th Cir. 2008). An amendment may "relate back" to the date of the original pleading if it "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. Fed. R. Civ. P. 15(c)(2). The Supreme Court has explained that a late-filed claim is unreviewable if it turns upon "events separate in 'both time and type' from

the originally raised episodes." *Mayle v. Felix*, 545 U.S. 644, 650, 657 (2004) (rejecting petitioner's claim that amended petition related back because "both the original petition and the amended pleading arose from the same trial and conviction."). Without the requirement of a "common core of operative facts," the "limitation period would have slim significance." *Id*. at 662.

Here, the Second Circuit issued a Summary Order on January 30, 2017. *See United States v. Diaz,* 16-503-CR, ECF. No. 70.1. Because the petitioner did not file a petition for certiorari, his habeas claim was due on April 30, 2018. Mr. Diaz filed his original 2255 motion on April 24, 2017. [ECF No. 1] In this motion to amend. Mr. Diaz seeks to "amend" his § 2255 petition by asserting that his counsel was ineffective in not moving to suppress evidence seized in a search consented to by a friend. He also contends, without a supporting affidavit or other documentation, that the search consent was given under duress and while consenter was on medication. *See* [ECF No. 13]*.* These facts involve wholly distinct facts and legal issues, and are events separate in time and type from the terms of the plea negotiation that he challenged originally, so they do not relate back. Mr. Diaz filed this motion to amend on June 28, 2019, fourteen months too late, and the Court denies these claims as untimely.[3]

    ii.    **Merits**

Further, Mr. Diaz's amendment does not provide enough information to satisfy the *Strickland* ineffective assistance of counsel test, or even to demonstrate

---

[3] Mr. Diaz also gestures towards these claims in his March 18, 2019 filing. [ECF No. 11]. But that filing too would be almost 11 months after the filing deadline.

that there are disputed facts which might, if they were resolved in his favor, satisfy it. First, he does not allege prejudice: he does not allege that, but for counsel's mis-advice or failure to file the motion to suppress, he would not have pleaded guilty and instead have insisted on going to trial or that he "likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Second, he does not establish that his counsel's performance was deficient because he does not support several of the claimed facts, and the remainder of the facts of the claims would not, if proven, suffice to make successful a motion to suppress. "[F]ailure to bring a meritless suppression motion cannot constitute ineffective assistance." *Brown v. McKee*, 231 Fed.Appx. 469, 475 (6th Cir. 2007) (quoting *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999)). Without support, Mr. Diaz claims the following: (1) law enforcement did not have a warrant to search the apartment; (2) "the female tenant," presumably Ms. Linda Rodriguez, consented to the search, but clearly stated that Mr. Diaz had come into the apartment with the toolbox in which the heroin was found; (3) her consent was under duress because she was threatened with arrest; (4) she was on medication; and (5) there was a high speed pursuit. [ECF No. 13].

There is support in the record for the first and the fifth claimed facts. On their own, these facts are insufficient to prevail, however. The remaining facts are supported only by Mr. Diaz's unsworn statements and are contradicted by the pre-sentence report in this case. *See Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 25 at ¶ 11. ("Upon being detained, Ms. Rodriguez voluntarily waived her Miranda rights and authorized the police to search the… 179 Hillside Avenue residence.").

**Finally, Mr. Diaz cites a number of cases without quotation in support. The Court is not persuaded as these cases are neither from this Circuit nor factually apposite.** See **U.S. v. Taylor, 600 F.3d 678 (6th Cir. 2010) (discussing third-party authority to consent to search);** United States v. Waller**, 426 F.3d 838, 846 (6th Cir. 2005) (same);** State v. Reichenbach**, 101 P.3d 80, 87 (Wash. 2004) (finding ineffective assistance of counsel for failure to file a motion to suppress a search where court concluded narcotics were "abandoned in response to the unlawful seizure of [defendant's person");** Martin v. Maxey, **98 F.3d 844 (5th Cir. 1996) (remanding habeas motion to district court for merits evaluation after finding that it was not procedurally barred).**

**Therefore, the Court finds that the motion's futility is an independent reason to deny it.** See **Fed. R. Civ. P. 15(a)(2);** McCarthy v. Dun & Bradstreet Corp.**, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility…").**

### D.  ECF No. 12: Motion to Amend

On June 24, 2019, Mr. Diaz moved to amend his habeas petition to include the claim that he is "serving a sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(i)," and the Supreme Court in *United States v. Davis*, [139 S. Ct. 2319 (2019)] found [the statute] unconstitutional."  [ECF No. 12]. *Davis* is inapposite, however.

In *Davis,* the Supreme Court held that the definition of "crime of violence" in § 924(c)(3)(B) was unconstitutionally vague. *United States v. Davis*, 139 S. Ct. 2319, 2325-46 (2019). Here, in contrast with the petitioner in that case, Mr. Diaz was neither charged with nor sentenced for committing a crime of violence or carrying

a firearm during or in furtherance of a crime of violence. Rather, Count Three of the indictment charged Mr. Diaz with possessing a firearm in furtherance of the drug trafficking crime charged in Count Two, *Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 1, and Mr. Diaz pleaded guilty to this charge. *Diaz*, No. 3:15-cr-00098-VLB-1, ECF No. 18 at 1 ("The defendant kept the firearm in furtherance of his drug trafficking.").

Therefore, the Court denies the motion to amend as futile. *See* Fed. R. Civ. P. 15(a)(2); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility…").

V.   Conclusion

There is no need for the Court to conduct a hearing on this habeas motion. Although courts generally "look with disfavor on summary rejection of a habeas petition," *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990) (quotation omitted), the text of § 2255 provides that the Court need not conduct a hearing where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b) (2014); *see also Aiello*, 900 F.2d at 534 (finding no reversible error in the failure to conduct a hearing where, as here, the district court had presided over the trial and was therefore "intimately familiar with the detailed factual record" and where petition's "allegations were patently meritless."); *see also Johnson v. Fogg*, 653 F.2d at 753 (holding that district court was not required to provide hearing to *pro se* litigant who did not raise issues sufficient to warrant a hearing). Mr. Diaz is not entitled to relief on his claims, and so the Court denies his petition, and also denies his motions to amend his petition as futile.

IT IS SO ORDERED.

_____/s/_____
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut: July 7, 2020**